AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| MAURICIO COHEN ASSOR and LEON COHEN LEVY | ) ) ) | Case No. 10-6159-RSR |
| *Defendant* | | |

FILED by _____ D.C.
APR 14 2010
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA – FT. LAUD.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of **1991-present** in the county of **Miami-Dade** in the **Southern** District of **Florida** and elsewhere, the defendant violated **18** U.S.C. § **371**, an offense described as follows:

unlawfully, willfully, and knowingly conspire and agree together and with other individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue, and one or more of such person committed any act to effect the object of the conspiracy.

This criminal complaint is based on these facts:

Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Scott Johnson, IRS-CI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/14/2010

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida

U.S. Magistrate Judge Robin S. Rosenbaum
*Printed name and title*

TOTAL P.01

AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>MAURICIO COHEN ASSOR and<br>LEON COHEN LEVY<br><br>*Defendant* | ) <br> ) <br> ) Case No.<br> ) <br> ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __1991-present__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__ and elsewhere, the defendant violated __18__ U. S. C. § __371__, an offense described as follows:

unlawfully, willfully, and knowingly conspire and agree together and with other individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue, and one or more of such person committed any act to effect the object of the conspiracy.

This criminal complaint is based on these facts:

**Affidavit**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Scott Johnson, IRS-CI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/14/2010__

_____
*Judge's signature*

City and state: __Fort Lauderdale, Florida__  U.S. Magistrate Judge Robin S. Rosenbaum
*Printed name and title*

# AFFIDAVIT

I, SCOTT JOHNSON, being duly sworn, depose and say:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS"). I have been employed with the IRS since approximately 2001. I am currently assigned to a group that investigates tax fraud, including, among other crimes, conspiracies to defraud the United States. I have also participated in investigations that focus on the use of foreign bank accounts by United States taxpayers and other individuals who willfully conceal assets and income from the IRS.

2. The information in this affidavit is based on my personal knowledge, information provided to me by others, including other law enforcement officials and civilian witnesses, as well as my review of documents associated with the case. I am fully aware of the facts and circumstances concerning this investigation and have participated in significant aspects of this investigation.

3. The information contained in this affidavit is submitted for the sole purpose of demonstrating probable cause to obtain a criminal complaint against MAURICIO COHEN ASSOR and LEON COHEN-LEVY, for violating Title 18, United States Code, Section 371, conspiracy to defraud the United States. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not contain all of the information known to me and/or other law enforcement officers involved in this case.

1

## Duty to Report Worldwide Income and Foreign Bank Accounts

4. United States citizens, resident aliens, and legal permanent residents of the United States are required to file an individual income tax return with the IRS reporting their worldwide income for each year if their gross income exceeds a certain amount.

5. Non-resident aliens of the United States who maintain a substantial presence in the United States, that is they are physically present in the United States for more than 183 days in a given year, are required to file an individual income tax return with the IRS reporting their worldwide income for each year if their income exceeds a certain amount.

6. Individuals who have United States source income in excess of a certain amount are required to file an individual income tax return with the IRS reporting such income, regardless of whether they are physically present in the United States.

### Background

7. MAURICIO COHEN ASSOR was born in Oran, Algeria, in or about 1933. He is a citizen of Spain. On June 4, 2001, he obtained an "E-2 Investor Visa" from the United States. An investor visa allows an individual to enter and work inside of the United States based on an investment the investor makes in a business located in the United States. MAURICIO COHEN ASSOR was the developer and owner of several residential hotels known by the trade name "Flatotel," including a hotel by that name in New York, New York.

8. A review of data stored in government databases documenting border crossings indicates that MAURICIO COHEN ASSOR was physically present in the United States for more than 183 days during 2002, 2003, 2004, and 2005, the years he held an E-2 Investor Visa and, therefore, he was a resident alien of the United States. As a resident alien of the United States,

2

MAURICIO COHEN ASSOR was obligated to file United States individual income tax returns with the IRS.

9. On or about December 6, 2004, MAURICIO COHEN ASSOR applied to become a legal permanent resident of the United States. On that application, he stated he had been living on Fisher Island in Miami-Dade County in Florida since June 2001. He did not list any foreign residences for the same time period. He further stated he had been employed as a "Financial Manager" of American Leisure Resorts since November 2001. On or about October 6, 2005, the United States granted MAURICIO COHEN ASSOR legal permanent residency. As a legal permanent resident, MAURICIO COHEN ASSOR was obligated to file United States individual income tax returns with the IRS.

10. LEON COHEN LEVY was born in Tangier, Morocco, in or about 1964, and is the son of MAURICIO COHEN ASSOR. On or about April 2, 1993, the United States granted him legal permanent residency. In or about July 2002, LEON COHEN LEVY applied to become a naturalized citizen of the United States. On that application, he stated he had resided on West 52nd Street, New York from in or about May 1991 to in our about February 2000, and that he had been living at North Bay Road, Miami Beach, Florida since in or about February 2000. On or about May 29, 2003, LEON COHEN LEVY became a naturalized citizen of the United States. As a United States citizen, LEON COHEN LEVY was obligated to file to file United States individual income tax returns with the IRS.

11. From in or about 1981 through in or about 2000, LEON COHEN LEVY and MAURICIO COHEN purchased a building in New York, which they renovated and developed into the New York Flatotel. In or about February 2000, MAURICIO COHEN ASSOR and

3

LEON COHEN LEVY sold the Flatotel located in New York and received approximately $33 million in proceeds from the sale.

### Return Information

12. The IRS has no record of a tax return filed by MAURICIO COHEN ASSOR, LEON COHEN LEVY, or their nominee entities reporting the $33 million in proceeds from the sale of the New York Flatotel in or about 2000.

13. A review of IRS records indicates that MAURICIO COHEN ASSOR failed to file a tax return for tax years 2000 through 2006.

14. LEON COHEN LEVY filed returns for tax years 2001, 2002, 2003 and 2005 listing an address in Miami Beach, Florida. On those returns, he reported nominal amounts of income ranging from $22,500 to $46,100.

### Banking History of Mauricio Cohen Assor

15. MAURICIO COHEN ASSOR and LEON COHEN LEVY made extensive use of nominee entities formed in tax haven jurisdictions, including the Bahamas, British Virgin Islands, Panama, Liechtenstein, and Switzerland. The nominee entities owned and controlled by MAURICIO COHEN ASSOR and LEON COHEN LEVY include, but are not limited to: Blue Ocean Finance, Ltd.; Caribbean Business Fund Corporation; Compania Europamerica Hoteleria; First Hotels & Resorts Investments, Inc.; Iderval Holding, Ltd.; International Winder Investissement, Inc. (a/k/a International Groupotel Establishment); Macson Express USA, Inc.; Summersun International Establishment; Whitebury Shipping Time-Sharing, Ltd.; and World Business Center.

16. "INTERNATIONAL BANK" was one of the largest international banks. It

4

conducted banking throughout the world, including in the Southern District of Florida and through its private banks in New York, New York and Geneva, Switzerland.

17. MAURICIO COHEN ASSOR opened, and caused to be opened, accounts at the private bank of INTERNATIONAL BANK in New York in the names of the following foreign nominee entities that he owned and controlled, including: Compania Europamerica Hoteleria; First Hotels & Resorts Investments, Inc.; and Whitebury Shipping Time-Sharing, Ltd.

18. MAURICIO COHEN ASSOR maintained accounts in the names of the following foreign nominee entities at the private bank of INTERNATIONAL BANK in Switzerland: Blue Ocean Finance, Ltd.; Caribbean Business Fund Corporation; Compania Europamerica Hoteleria; and Whitebury Shipping Time-Sharing, Ltd.

19. From in or about 1987 through in or about 2001, in connection with opening and maintaining an account in his own name at the private bank of INTERNATIONAL BANK in New York, MAURICIO COHEN ASSOR completed and signed, and caused to be completed and signed, Forms W-8BEN, Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding. On those forms, MAURICIO COHEN ASSOR certified that he was not subject to taxation in the United States. Each of the forms contained a section titled: "Notice of Change in Status." In that section, the form stated that: "If you become a U.S. citizen or resident after you have filed the W-8BEN, or you cease to be an exempt foreign person you must notify the payer within 30 days of your change in status. ... Reporting will begin on the account(s) listed and backup withholding may also begin ....".

20. The Form W-8BEN also contained a section entitled "False Certificate." That section stated: "If you file a false certificate when you are not entitled to the exemption from

5

withholding or reporting, you may be subject to penalties and/or imprisonment under U.S. perjury laws."

21. On or about the following dates, MAURICIO COHEN ASSOR provided, and caused to be provided, to the private bank of INTERNATIONAL BANK in New York, Forms W-8BEN in his own name: June 15, 1987; January 27, 1988; January 2, 1991; March 4, 1994; April 29, 1996; February 2, 1999; and January 16, 2001.

22. Although MAURICIO COHEN ASSOR opened accounts at the private bank of INTERNATIONAL BANK in the names of foreign nominee entities, as listed in ¶ 17, and the bank treated those foreign nominee entities as the real owners for tax purposes, the bankers who handled the accounts knew and documented that MAURICIO COHEN ASSOR was the beneficial owner of the accounts and that the money in the accounts was owned by MAURICIO COHEN ASSOR.

23. In or about June 1992, MAURICIO COHEN ASSOR opened, and caused to be opened, an account the private bank of INTERNATIONAL BANK in New York in the name of Compania Europamerica Hoteleria, a Panamanian corporation. According to documents maintained by the bank, MAURICIO COHEN ASSOR was not the owner of the account but, rather, held a power of attorney for the account. However, in an internal bank memorandum dated June 14, 1994, discussing the ownership of the account, a banker wrote: "[A]lthough the signatories are Swiss lawyers, the real beneficiary is Mauricio Cohen, well known to us . . .". The banker noted that MAURICIO COHEN ASSOR "is well-known to senior management in Geneva and all transactions are well understood and are legitimate business transactions." The banker further noted that MAURICIO COHEN ASSOR owned apartment hotels in several

6

countries, including New York, and that he used the account opened in the name of Compania Europamerica Hoteleria "for business transactions as he doesn't want to use his personal account for such."

### The Whitebury Account

24. In or about December 1, 2002, at a time when MAURICIO COHEN ASSOR was a resident of Fisher Island, Florida, he opened, and caused to be opened, an account in the name of Whitebury Shipping Time-Sharing, Ltd. ("Whitebury"), at the private bank of INTERNATIONAL BANK in New York.

25. Whitebury was a British Virgin Islands corporation that was owned through bearer shares. Unlike a corporation with registered shares, where the owners of the entity are identified in the corporation's records, the ownership of a bearer share corporation is based on physical possession of the stock certificates.

26. It is my experience that bearer share corporations are often used to hide the true ownership of assets because ownership records are not maintained and nominee officers and directors are often used to control the affairs of the corporation.

27. On or about December 2, 2002, MAURICIO COHEN ASSOR provided, and caused to be provided, a Form W-8BEN to the private bank of INTERNATIONAL BANK in New York stating that Whitebury was the beneficial owner of the account opened in the entity's name. Contrary to the information on the W-8BEN, internal bank forms stated that MAURICIO COHEN ASSOR was in fact the 100% beneficial owner of the Whitebury account. In fact, internal bank documents stated that the "account in the name of 'Whitebury Shipping Time-Sharing Ltd.' . . . is a BVI company, which Mr. Cohen uses as a personal investment company."

7

28. The names and signatures of MAURICIO COHEN ASSOR, his spouse, his daughter, and LEON COHEN LEVY appear on the account opening application and the signature card for the Whitebury account. Further, the bank had in its files documents that purported to grant to those individuals powers of attorney over the Whitebury account.

29. Although INTERNATIONAL BANK knew, or had reason to know, that MAURICIO COHEN ASSOR resided in the United States, the bank accepted representations and documentation of foreign status, including a copy of MAURICIO COHEN ASSOR's Spanish passport.

30. Although INTERNATIONAL BANK knew, or had reason to know, that LEON COHEN LEVY resided in the United States, the bank accepted representations and documentation of foreign status, including a copy of LEON COHEN LEVY's Spanish passport.

### Transfer of Funds Into the Whitebury Account

31. As stated above, in or about February 2000, MAURICIO COHEN ASSOR sold the Flatotel located in New York and received approximately $33 million in proceeds from the sale. On or about February 16, 2000, MAURICIO COHEN ASSOR transferred, and caused to be transferred, the $33 million to an account opened in the name of Blue Ocean at the private bank of INTERNATIONAL BANK in Switzerland. According to bank documents, MAURICIO COHEN ASSOR was the 100% beneficial owner of that account.

32. The next day, MAURICIO COHEN ASSOR transferred, and caused to be transferred, $32 million from the Blue Ocean account to an account opened in the name of Caribbean Business Fund Corporation at the INTERNATIONAL BANK in Switzerland.

According to documents maintained by INTERNATIONAL BANK, MAURICIO COHEN ASSOR and LEON COHEN LEVY were the beneficial owners of that account.

33. On or about September 3, 2002, MAURICIO COHEN ASSOR transferred, and caused to be transferred, approximately $15.7 million in bonds from an account maintained in the name of Compania Europamerica Hoteleria at the private bank of INTERNATIONAL BANK in Switzerland to an account maintained in the same name at the private bank of INTERNATIONAL BANK in New York.

34. On or about December 17, 2002, MAURICIO COHEN ASSOR transferred, and caused to be transferred, approximately $32 million in bonds and cash from the account maintained in the name of Compania Europamerica Hoteleria to the account maintained in the name of Whitebury at the private bank of INTERNATIONAL BANK in New York.

### Year End Account Balances in Whitebury Account

35. Over the period December 31, 2002, through December 31, 2006, MAURICIO COHEN ASSOR maintained the following closing balances in the Whitebury account at the private bank of INTERNATIONAL BANK in New York:

| DATE | ACCOUNT BALANCE |
|---|---|
| December 31, 2002 | $33,168,183 |
| December 31, 2003 | $45,217,534 |
| December 31, 2004 | $45,661,125 |
| December 31, 2005 | $41,061,662 |
| December 31, 2006 | $27,822,840 |

9

### Income Generated in the Whitebury Account

36. According to bank documents, the Whitebury account at the private bank of INTERNATIONAL BANK in New York, generated at least $3.5 million of gross income during 2003 through 2007:

| YEAR | INCOME |
|---|---|
| 2003 | $2,205,219 |
| 2004 | $277,625 |
| 2005 | $492,750 |
| 2006 | $392,750 |
| 2007 | $135,000 |

37. Based on my review of IRS records, none of the income generated in the Whitebury account at the private bank of INTERNATIONAL BANK in New York, was reported on a U.S. tax return filed with the IRS.

### Closing the Whitebury Account

38. In or about April 2007, a banker at the private bank of INTERNATIONAL BANK in New York, informed MAURICIO COHEN ASSOR that he could not maintain an account in the name of Whitebury, a Panamanian bearer share corporation, and that accounts at the bank had to be maintained in the name of a corporation with registered shares.

39. In or about April 2007, during a recorded telephone conversation with a banker at the private bank of INTERNATIONAL BANK in New York, MAURICIO COHEN ASSOR refused to provide INTERNATIONAL BANK with shareholder information for Whitebury. He told the banker that he wanted to use bearer shares because he used his relatives names as

nominee owners of the corporations. He further stated that if registered shares were issued in the names of his relatives, he feared they could claim that the money was theirs and not his. He offered to change the nominal ownership of the account from Whitebury to another Panamanian corporation in the name of a beneficial owner other than himself. However, he refused to have shares of the nominee entity issued to himself.

40. In or about April 2007, during a recorded telephone conversation with a banker at the private bank of INTERNATIONAL BANK in New York, MAURICIO COHEN ASSOR stated he refused to have shares put in his own name because "I'm a resident here." He added "why do you think I put . . . my brother-in-law [a Venezuelan national] . . . [H]e gives me his passport, he gives me everything."

41. In or about April 2007, during a recorded telephone conversation with a banker at the private bank of INTERNATIONAL BANK in New York, MAURICIO COHEN ASSOR stated that he had recently opened an account in the name of a Panamanian bearer share corporation at the private bank of INTERNATIONAL BANK in Switzerland, and that he would transfer the funds to that account.

42. In or about April 2007, during a recorded telephone conversation with a banker at the private bank of INTERNATIONAL BANK in New York, the banker discussed the Whitebury account with MAURICIO COHEN ASSOR and noted that the beneficial owner of the Whitebury account had been changed from MAURICIO COHEN ASSOR to his brother-in-law, who was a citizen of Venezuela. The banker challenged MAURICIO COHEN ASSOR to prove that he had sold the company to his brother-in-law, and that his brother-in-law had sufficient assets to purchase the company. MAURICIO COHEN ASSOR refused to provide the

11

banker with proof of the sale of Whitebury to his brother-in-law or that his brother-in-law had sufficient assets to make the purchase. Instead, MAURICIO COHEN ASSOR informed the banker that he wished to close the Whitebury account.

43. On or about May 7, 2007, MAURICIO COHEN ASSOR caused to be transferred $22 million from the Whitebury account at the private bank of INTERNATIONAL BANK in New York to an attorney escrow account in Miami, Florida. He used the funds transferred to the escrow account to pay off mortgages secured by residential properties that he owned and where MAURICIO COHEN ASSOR, LEON COHEN LEVY, and their family members resided.

44. On or about May 7, 2007, MAURICIO COHEN ASSOR caused to be transferred a bond portfolio worth approximately $5 million from the Whitebury account at the private bank of INTERNATIONAL BANK in New York to an account he controlled in the name of Whitebury at the private bank of INTERNATIONAL BANK in Switzerland.

### Use of American Leisure Resorts to Pay the Cohens' Personal Expenses

45. LEON COHEN LEVY and MAURICIO COHEN ASSOR represented themselves, respectively, as the director and president of American Leisure Resorts, Inc. American Leisure Reports was a Florida corporation with a principal place of business in Miami Beach, Florida. They opened bank accounts in the name of American Leisure Resorts, including an account at INTERNATIONAL BANK in New York. LEON COHEN LEVY and MAURICIO COHEN ASSOR represented to INTERNATIONAL BANK that they owned, respectively, 30% and 70% of American Leisure Resorts.

46. LEON COHEN LEVY and MAURICIO COHEN ASSOR had signature authority over the American Leisure Resorts accounts. When LEON COHEN LEVY entered the United

States in or about November 2009, he informed immigration officials that he was responsible for the accounting for American Leisure Resorts.

47.   LEON COHEN LEVY and MAURICIO COHEN ASSOR used bank accounts maintained in the name of American Leisure Resorts to fund a luxury lifestyle for themselves and for their family members. They authorized disbursements from the accounts that were made to pay the family's personal expenses, including mortgage payments on lavish personal residences, living expenses, and car expenses relating to luxury automobiles, including a $67,000 Dodge Viper, a $188,000 Bentley, and $700,000 of other vehicles.

48.   A primary source of funds for American Leisure Resorts came from transfers from the Whitebury account at the private bank of INTERNATIONAL BANK in New York, including $22 million that was transferred in or about 2007.

13

49. Based upon the foregoing, there is probable cause to believe that, from in or about 1991 to the present, MAURICIO COHEN ASSOR and LEON COHEN LEVY conspired with each other, and others, to defraud the United States by using foreign nominee entities to conceal their income and assets from the IRS, by failing to file United States income tax returns, by filing false United States income tax returns, and by falsifying tax reporting forms, in the Southern District of Florida and elsewhere, all for the purpose of impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes, in violation of 18 U.S.C. § 371.

SCOTT JOHNSON
Special Agent, IRS-CI

Subscribed and sworn before me on this
___ day of April, 2010, in Ft. Lauderdale, Florida

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

49. Based upon the foregoing, there is probable cause to believe that, from in or about 1991 to the present, MAURICIO COHEN ASSOR and LEON COHEN LEVY conspired with each other, and others, to defraud the United States by using foreign nominee entities to conceal their income and assets from the IRS, by failing to file United States income tax returns, by filing false United States income tax returns, and by falsifying tax reporting forms, in the Southern District of Florida and elsewhere, all for the purpose of impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes, in violation of 18 U.S.C. § 371.

SCOTT JOHNSON
Special Agent, IRS-CI

Subscribed and sworn before me on this
14th day of April, 2010, in Ft. Lauderdale, Florida

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE